Melvin R. SIMPSON, Lawrence P. Barbour, Gloria Pressley, Novelle J. Dickenson, and Rodney Garbiso, Plaintiffs,

v.

CITY OF HAMPTON, VIRGINIA; City Council of Hampton; James L. Eason, Mayor of the city of Hampton; Turner M. Spencer, Vice-mayor of the city of Hampton; Ross A. Kearney, Ruthann N. Kellum, Linda E. McNeely, Joseph Spencer, and Charles A. Wornom, members of the City Council of Hampton; City of Hampton Electoral Board; I. Fletcher Johnson, Solon Paul, and Muriel Wright, members of the city of Hampton Electoral Board; and Margaret Ann Parish, city of Hampton Voting Registrar, Defendants.

No. 4:95cv83.

United States District Court,
E.D. Virginia,
Newport News Division.

March 15, 1996.

Oscar Houser Blayton, Hampton, VA, Stephen Barkai Pershing, ACLU Foundation of Virginia, Richmond, VA, J. Gerald Hebert, Alexandria, VA, for plaintiffs.

E. Duncan Getchell, Jr., McGuire, Woods, Battle & Boothe, Norfolk, VA, John William Boland, McGuire, Woods, Battle & Boothe, Richmond, VA, Dana Johannes Finberg, McGuire, Woods, Battle & Boothe, Richmond, VA, George J. Terwilliger, III, McGuire, Woods, Battle & Boothe, Washington, DC, for Defendants.

## OPINION AND ORDER

MORGAN, District Judge.

Pending before the Court is Plaintiffs' Motion for a Preliminary Injunction. On January 4, 1996 Plaintiffs filed the motion and a Brief in Support. On January 16, 1996 Defendants filed a Memorandum of Law Opposing Plaintiffs' Motion for Preliminary Injunction. On January 19, 1996 Plaintiffs filed a Reply Brief, and on January 22, 1996 Plaintiffs filed a Supplemental Reply Brief. On February 29, 1996 the Court conducted a hearing on this matter. Due to the applicable time elements, the Court announced its decision from the bench following the hearing, and it now publishes this opinion to further state the rationale for its decision.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs instituted this suit pursuant to sections 2 and 12(d) of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973 and 1973j. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Plaintiffs seek a preliminary injunction under Federal Rule of Civil Procedure 65 and 42 U.S.C. § 1973j.

Plaintiffs claim that the city of Hampton's councilmanic electoral system violates section 2 of the Voting Rights Act. The Hampton City Council has seven (7) members, including the mayor, all of whom are elected at large. The council members are elected to four (4) year terms with three (3) members elected in one biannual election and three (3) in the next biannual election. The mayor is also elected to a four (4) year term. Plaintiffs claim that these at large elections dilute their voting power as minorities. Plaintiffs seek a new councilmanic electoral plan that utilizes a ward system.

The deadline by which candidates must qualify for the 1996 city council elections is March 5, 1996 as set out in Virginia Code § 24.2–507(2). The city council elections are scheduled for May 7, 1996.

On August 23, 1995 Defendants moved the Court for an enlargement of time to file their responsive pleading to December 5, 1995 pursuant to Federal Rule of Civil Procedure 6(b)(1). The motion was heard by a magistrate judge. The magistrate judge granted Defendants' motion insofar as he enlarged the time for Defendants to file a responsive pleading to October 19, 1995. Defendants objected to the magistrate judge's order and sought a stay of this order. On October 19, 1995 the Court heard Defendants' objections to the magistrate judge's order and motion to stay the magistrate judge's order. The Court treated the motion as an objection to the magistrate judge's order and affirmed the order insofar as the Court ordered the responsive pleadings to be filed by October 19, 1995. The Court advised both parties that it would treat Defendants' submissions to the Court as a motion to stay the action. The Court allowed Plaintiffs to respond to Defendants' motion as reconstituted. The Court conducted a hearing on the motion to stay the proceedings on October 24, 1995. The Court denied Defendants' motion to stay.

On October 23, 1995 Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court conducted a hearing on this motion on December 1, 1995. The Court denied Defendants' Motion to Dismiss.

Plaintiffs have now moved the Court to preliminarily enjoin the conducting of the May 7, 1996 election under the present at large system and have requested that the Court implement some type of ward system.

### II. STANDARD OF REVIEW

■ It is sufficient [to grant the motion [for a preliminary injunction]] if the court is satisfied that there is a probable right and a probable danger, and that the right may be defeated, unless the injunction is issued, *and considerable weight is given to the need of protection to the plaintiff as contrasted with the probable injury to the defendant.*

*Blackwelder Furn. Co. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189, 193 (4th Cir.1977) (quoting *Sinclair Refining Co. v. Midland Oil,* 55 F.2d 42, 45 (4th Cir.1932)) (first brackets in original). The following four (4) factors are to be considered: 1) the likelihood that the

movant will suffer irreparable harm if the motion for a preliminary injunction is denied, 2) the likelihood that the non-moving party will suffer irreparable harm if the motion for a preliminary injunction is granted, 3) the likelihood that the movant will succeed on the merits, and 4) the public interest. *Blackwelder Furniture Co.*, 550 F.2d at 193 (citations omitted).

 "If a decided imbalance of hardship should appear in plaintiff's favor.... [ ]it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Blackwelder*, 550 F.2d at 195 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740–43 (2d Cir.1953)) (citations omitted). "The decision to grant or deny a preliminary injunction depends upon the 'flexible interplay' among all of the factors considered." *Id.* at 196 (citations omitted).

> This circuit differentiates between requests for preliminary injunctive relief that seek merely to maintain the status quo and requests that seek "mandatory" relief that in some fashion disturbs the status quo, especially where that relief would in effect operate to decide the merits of the case in favor of the moving party.

*X Corp. v. Doe*, 805 F.Supp. 1298, 1303 (E.D.Va.1992), *aff'd, Under Seal v. Under Seal*, 17 F.3d 1435 (4th Cir.1992) (citations omitted). "The moving party bears a heavier burden when seeking mandatory relief." *Id.* Also, the Fourth Circuit Court of Appeals stated in dicta, "Mandatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman*, 34 F.3d 266, 270 n. 2 (4th Cir.1994) (citations omitted).

### III. ANALYSIS

The Supreme Court set out the following preconditions to a section 2 Voting Rights Act claim in *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986):

> First, the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single member district. If it is not, as would be the case in a substantially integrated district, the *multimember form* of the district cannot be responsible for minority voters' inability to elect its candidates. Second, the minority group must be able to show that it is politically cohesive. If the minority group is not politically cohesive, it cannot be said that the selection of a multimember electoral structure thwarts distinctive minority group interests. Third, the minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it-in the absence of special circumstances, such as the minority candidate running unopposed-usually to defeat the minority's preferred candidate. In establishing this last circumstance, the minority group demonstrates that submergence in a white multimember district impedes its ability to elect its chosen representatives.

*Id.* at 50–51, 106 S.Ct. at 2766–67. The Supreme Court qualified these preconditions by stating, "Finally, we observe that the usual predictability of the majority's success distinguishes structural dilution from the mere loss of an occasional election." *Id.*

"Once the three (3) preconditions set forth in *Thornburg* are established, the trier of fact must determine whether, based on the totality of circumstances, the use of a multimember district violates § 2." *Cane v. Worcester County, Maryland*, 35 F.3d 921, 925 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995) (citing *Johnson v. DeGrandy*, —— U.S. ——, ——–——, 114 S.Ct. 2647, 2657–58, 129 L.Ed.2d 775 (1994)). "The essence of this inquiry is whether the 'electoral ... structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by [minority] and [majority] voters to elect their preferred representatives.'" *Id.* (citing *Thornburg*, 478 U.S. at 47, 106 S.Ct. at 2764). This is a factual finding subject to the clearly erroneous standard of review. *Id.* (citations omitted). The Fourth Circuit Court of Appeals gave the following non-exhaustive list of factors to be considered in this analysis:

(1) a history in the state or political subdivision of official voting-related discrimination against the minority group; (2) the extent of racial polarization in the election of the state or political subdivision; (3) the extent to which the state or political subdivision has used voting practices or procedures that enhanced the opportunity for discrimination against the minority group; (4) the exclusion of minority group members from the candidate slating processes; (5) the extent to which past discrimination in areas such as education, employment, and health hinder the ability of members of the minority group to participate effectively in the political processes; (6) the use of racial appeals in political campaigns; (7) the extent to which minority group members have been elected to public office in relevant jurisdiction; (8) whether elected officials exhibit a significant lack of responsiveness to the particularized needs of minority group members; and (9) whether the policies offered to justify the challenged voting practices are tenuous.

*Id.* (citing *Thornburg,* 478 U.S. at 44–45, 106 S.Ct. at 2763–64; S.Rep. No. 417, 97th Cong., 2d Sess. 28–29 (1982), *reprinted in* 1982 U.S.C.C.A.N. 177, 206–07).

█ A mandatory injunction altering the electoral system six (6) days before the candidate filing deadline is an extraordinary remedy. The candidates made their decision to run under the present system long before this hearing, and no doubt have already invested significant time and effort. Also, any remedy the Court could impose would involve the postponement of the election. For these reasons Plaintiffs have a considerable burden to meet in order to obtain a preliminary injunction.

While the Plaintiffs' evidence satisfies the first two (2) *Gingles* preconditions, they have not met this burden as to the third. Two (2) experts testified before the Court and they reached different conclusions as to whether the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate. Depending on which time span is examined, the evidence before the Court establishes that approximately 50% to 65% of the minority's candidates of choice as defined by *Collins v. City of Norfolk,* 883 F.2d 1232 (4th Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 340, 112 L.Ed.2d 305 (1990), have been elected. Based on this testimony, Plaintiffs did not meet their burden of proof as to the third *Gingles* precondition in establishing that the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate. The Court observes that the focus of the Plaintiffs' presentation was the race of the candidate elected, whereas the focus of the Voting Rights Act is upon the opportunity of a minority to elect the candidate of its choice regardless of race.[1]

Accordingly, while the Plaintiffs may suffer harm by the election of candidates not of their choice to four (4) year terms, at this stage of the proceeding they have not established a likelihood of prevailing on the merits. On the other hand, granting the relief sought could cause irreparable harm to the Defendants. Most importantly, the Court **FINDS** that the public interest will not be served by granting relief at this time which would compel the postponement of an election scheduled for May 7, 1996. Such action would be intrusive, and the evidence presently before the Court does not justify such an intrusion.

The Court must comment upon the absence of legislative action on this issue. Counsel for the Defendants confidently assured this Court that the Hampton City Council was committed to a modified ward system described as the 2–2–3 plan, and further represented that the Virginia Legislature was expected to approve the city charter

---

1. *See Thornburg,* 478 U.S. at 67–68, 106 S.Ct. at 2774–75; *Collins,* 883 F.2d at 1238; Alex Marshall, *3 Dispute White Man's Run for Council,* The Virginian–Pilot, March 3, 1996 at B1, B3 (quoting A.E. Dick Howard). A.E. Dick Howard, recognized constitutional scholar and professor at the University of Virginia School of Law states:

> The intent of the Voting Rights Act was to create majority-minority districts, in which the majority of voters in that district are free to choose whom they please to represent them. The thrust of the act is not the race of the person elected, but the race of the electors.

amendment required to implement this plan. The evidence at the February 29, 1996 hearing reveals that the local legislators had given no assurances, and apparently had not been officially advised of the proposed amendment at the time counsel made this representation. The failure of the legislature to act is easier to understand than the confidence with which the Defendants' counsel represented it would at the hearings wherein Defendants' counsel sought the dismissal or stay of this proceeding.

### III. CONCLUSION

The Court **DENIES** Plaintiffs' Motion for a Preliminary Injunction. The Court **ORDERS** Plaintiffs and Defendants to stipulate to a court-appointed expert by March 11, 1996. If the parties cannot agree on an expert, the Court **ORDERS** Plaintiffs and Defendants each to submit the names of three (3) experts by March 11, 1996. The Court will consider such lists if it chooses a court-appointed expert. The costs of this expert shall be apportioned between the parties as determined by the Court.

The Clerk is **REQUESTED** to mail a copy of this Order to counsel for Plaintiffs and counsel for Defendants.

It is so **ORDERED.**