Affirmed by published opinion. Judge DONALD S. RUSSELL wrote the majority opinion, in which Judge MICHAEL joined. Judge PAYNE wrote a dissenting opinion.
OPINION
DONALD S. RUSSELL, Circuit Judge:
The state and national Libertarian Party and two of its members[1] challenge West Virginia’s primary-election-eve deadline for filing nominating petitions as an unconstitutional restriction on access to the ballot.
In 1992, the Libertarian Party (the “Party”) sought to place Karl Hess on the general election ballot in West Virginia as the Party’s candidate for governor. Because the Party had not accumulated one percent of the vote in the preceding gubernatorial election, West Virginia election law required the party to submit a nominating petition endorsed by a number of registered voters equal to one percent of the total voter turnout in the preceding gubernatorial election. W. Va. Code §§ 3-1-8 and 3-5-23. West Virginia law requires candidates for offices other than president or vice-president to submit such nominating petitions no later than the day preceding the primary,[2] which is held on the second Tuesday in May. W. Va.Code §§ 3-5-1 and 3-5-24. West Virginia law also prohibits a registered voter who signs a nominating petition from voting in the next primary election. W. Va.Code § 3-5-23(c).
On or around March 1, 1992, the Party began its petition drive to collect the 6,533 signatures required to place Hess on the ballot. On May 11, 1992, the day before the 1992 primary election, the Party filed its petition with 11,159 signatures supporting Hess’ candidacy. The Secretary of State, Ken Heehler, subsequently declared 6,704 of the submitted signatures to be invalid. Of these, 2,574 signators were rejected because they had voted in the primary.[3] The Secretary of State accepted only 4,455 signatures *164 supporting Hess’ candidacy and thus disqualified the Libertarian Party from access to the 1992 gubernatorial ballot.
Upon learning in late July that it did not have enough signatures to place Hess on the ballot, the Party immediately restarted its ballot drive. Brian Horton, who had coordinated the failed petition drive, was replaced by two of the Party’s national directors. On August 3, 1992, the Party filed 4,821 additional signatures. The Secretary of State found only 2,202 of these additional signatures to be valid, but these signatures, in addition to 4,455 valid signatures submitted on May 11, were sufficient to meet the one-percent requirement. The Secretary of State, however, did not place Hess on the 1992 gubernatorial ballot because the Libertarian Party had not filed the requisite number of signatures by the day before the primary election.
On August 8, 1992, the plaintiffs filed this action in the United States District Court for the Southern District of West Virginia. The plaintiffs challenge West Virginia’s primary-eve deadline for filing nominating petitions as an unconstitutional restriction on access to the ballot. The plaintiffs do not challenge West Virginia’s requirement that registered voters choose between signing a nominating petition and voting in the primary election. Instead, they argue that the primary-eve filing deadline, in light of the forced-choice provision, is unconstitutional.
When considering a challenge to a state election law, a court must weigh “the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiffs seek to vindicate” against “the precise interests put forward by the State as justifications for the burden imposed by its rule....” Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983). In doing so, the corut must consider “the extent to which those interests make it necessary to burden the plaintiffs rights.” Id. The Court has stated:
[T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized, when those rights are subjected to “severe” restrictions, the regulation must be “narrowly drawn to advance a state interest of compelling importance.” [Norman v. Reed, 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992).] But when a state election law provision imposes only “reasonable, nondiscriminatory restrictions” upon the First and Fourteenth Amendment rights of voters, “the State’s important regulatory interests are generally sufficient to justify” the restrictions. [Anderson, 460 U.S. at 788, 103 S.Ct. at 1570.]
Burdick v. Takushi, 504 U.S. 428, 432-36, 112 S.Ct. 2059, 2063-64, 119 L.Ed.2d 245 (1992).
In a previous case, the district court considered and upheld the constitutionality of West Virginia’s primary-eve filing deadline. The district court held that “the burdens placed upon the challengers under West Virginia election laws are not great” and that ‘West Virginia has an important interest in requiring third party and independent candidates to demonstrate a modicum of community support before placing their names on its general election ballot.” Socialist Workers Party v. Hechler, 696 F.Supp. 190, 201-02 (S.D.W.Va.1988). On appeal, we affirmed the portion of the district court’s decision upholding the constitutionality of the primary-eve filing deadline. Socialist Workers Party v. Hechler, 890 F.2d 1303, 1305-07 (4th Cir.1989), cert. denied, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990).
In the instant ease, the Libertarian Party provided the district court with historical data of minor party access to the ballot in West Virginia throughout this century. To summarize, their evidence demonstrated that minor parties placed numerous candidates on the ballot for congressional and state offices in the election years before 1937. Between 1937 and 1980, no minor party candidate for Congressional or state office gained access to the ballot, and since 1980, only a handful of minor party candidates have been placed on the ballot. The plaintiffs correlated this historical data with the various changes in West Virginia’s election laws over the same period *165 of time in an attempt to demonstrate that the primary-eve filing deadline is a severe burden on minor parties’ ability to gain access to the ballot.
In reviewing this historical evidence, we found that several facts undermined the conclusion that the Libertarian Party wanted us to draw. In 1932 and 1936, West Virginia election law included the same restrictions as the current code. In those years, West Virginia held its primary on the second Tuesday in May, and it imposed the primary-eve filing deadline and the forced-choice provision. Despite these restrictions, several dozen minor party candidates gained access to the ballot for congressional and statewide offices in 1932 and 1936. In 1984, furthermore, West Virginia suspended its primary-eve filing deadline, and minor party candidates could file nominating petitions as late as August. Despite the suspension of the deadline, only one minor party candidate gained access to the ballot for congressional and statewide offices, a decrease from the four minor candidates who gained access to the ballot for congressional and statewide offices in 1982, when West Virginia enforced the primary-eve filing deadline. If the primary-eve filing deadline was a severe burden on ballot access, as the plaintiffs claim, we would have expected to see far fewer minor party candidates on the ballot in the 1932 and 1936 elections and an explosion of minor party candidates in 1984. The plaintiffs’ historical evidence appears to demonstrate just the opposite.
The district court carefully analyzed the record submitted by the plaintiffs and held that West Virginia’s primary-eve filing deadline is not a severe restriction on minor parties’ access to the ballot, and it again upheld the constitutionality of the primary-eve filing deadline. After examining the record, considering the parties’ briefs, and hearing oral argument, we affirm on the thorough reasoning of the district court. See Hess v. Hechler, 925 F.Supp. 1140 (S.D.W.Va.1995).

AFFIRMED.

. The plaintiffs are the Libertarian Party National Committee; the West Virginia Libertarian Party; Brian Horton, the West Virginia Libertarian Party Chairman, the coordinator of the West Virginia Libertarian Party's petition drive in 1992, and the Libertarian Party’s candidate for West Virginia State Auditor in 1992; and Christine Fishbeck, a member of the Libertarian Party. Karl Hess, the Libertarian Party’s candidate for West Virginia governor in 1992 was originally a plaintiff; he died in 1994.

. Nominating petitions for candidates for president or vice-president must be submitted by August 1 in the year of the election. W. Va.Code § 3-5-23(a).

.Under West Virginia law, persons soliciting signatures for a nominating petition must inform each potential signator that signing the petition disqualifies him or her from participating in the primary election. W. Va.Code § 3-5-23(c). After the Secretary of State received complaints that the Party's solicitors were not always informing prospective signators of their disqualification from voting in the primary, Hess agreed to allow the Secretary of State to void all signators who subsequently voted in the 1992 primary.