UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-1832
(CA-94-47-D)

George R. Wood, etc.,

Plaintiff - Appellee,

versus

M. Bruce Meadows, etc.,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed July 1, 1997, as follows:

On page 2, first full paragraph of the opinion, line 12 -- the word "not" is deleted between the words "does" and "as."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GEORGE R. WOOD, a/k/a George R.
"Tex" Wood,
<u>Plaintiff-Appellee,</u>

v.

No. 96-1832

M. BRUCE MEADOWS, Secretary of
the State Board of Elections,
Commonwealth of Virginia,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-94-47-D)

Argued: May 8, 1997

Decided: July 1, 1997

Before LUTTIG, Circuit Judge, COPENHAVER, United States
District Judge for the Southern District of West Virginia, sitting by
designation, and MICHAEL, Senior United States District Judge for
the Western District of Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Judge Luttig wrote the
opinion, in which Judge Copenhaver and Senior Judge Michael
joined.

_____

**COUNSEL**

**ARGUED:** James Walter Hopper, Senior Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for

Appellant. Matthew Dean Pethybridge, KRATMAN, PETHY-
BRIDGE & SWINDELL, P.C., Blacksburg, Virginia, for Appellee.
**ON BRIEF:** James S. Gilmore, III, Attorney General of Virginia,
David E. Anderson, Chief Deputy Attorney General, Frank S. Fergu-
son, Deputy Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Appellant.

_____


## OPINION

LUTTIG, Circuit Judge:

Plaintiff-appellee George R. Wood sought to have his name
included on the Commonwealth's November 1994 general election
ballot as an independent candidate for the United States Senate.
Because Wood had failed to comply with Virginia's filing deadline
for independent candidates, see Va. Code Ann. §§ 24.2-506, 24.2-
507(1), the Commonwealth refused to place his name on the ballot.
Wood thereafter brought this suit, alleging that the Commonwealth's
filing deadline violated his rights and those of his supporters under
the First and Fourteenth Amendments of the Constitution of the
United States. The district court granted summary judgment in
Wood's favor, holding that the Commonwealth's filing deadline for
independent candidates for the United States Senate does, as
Wood alleges, violate both the First and Fourteenth Amendments.
Because the district court erred in concluding that its disposition of
this case is controlled by our decision in Cromer v. South Carolina,
917 F.2d 819 (4th Cir. 1990), and, as a result, failed to analyze
Wood's claim under the test set forth by the Supreme Court in
Anderson v. Celebrezze, 460 U.S. 780 (1983), we reverse and remand
to the district court for further proceedings.

I.

Virginia law requires that all candidates for public office, with the
exception of Presidential and Vice Presidential candidates, see Va.
Code Ann. § 24.2-543, file declarations of candidacy and nominating
petitions signed by one-half of one percent of registered Virginia vot-
ers by at least 150 days before the general election, see Va. Code

2

Ann. §§ 24.2-506, 507(1), 509, 510(1), 515, which is the day on which political parties must hold their party primaries, see Va. Code Ann. § 24.2-515. This 150 day filing deadline applies to independent and party candidates alike. Independent candidates therefore must file their declarations and petitions "by 7:00 p.m. on the second Tuesday in June" before the November election, Va. Code. Ann. § 507(1), which is 150 days before the general election.**1** And, while political parties are generally free to choose their candidates by party primary or otherwise, see Va. Code. Ann. § 24.2-509, the party candidates must file their declarations and petitions by at least 150 days prior to the general election. Indeed, parties that select their candidates through party primaries must require their candidates to submit their declarations and petitions 60 days before the party primary, see Va. Code Ann. § 24.2-522(A), which, in Virginia, is 210 days before the general election, see Va. Code. Ann. § 24.2-515 (requiring that party primaries must take place on the 150th day before the general election). Parties that select their candidates through means other than a party primary must complete their selection procedure by 150 days before the general election. See Va. Code. Ann. § 24.2-510(1).

In this case, there is no dispute that Wood, an independent candidate for the United States Senate, failed to comply with the Commonwealth's 150 day filing deadline. Instead, Wood challenges that deadline as unconstitutional under the First and Fourteenth Amendments, arguing that the deadline "unconstitutionally burdens the voting and associational rights of [him] and his supporters." Appellee's Br. at 1.**2** Before the district court, the Commonwealth advanced administrative convenience as the "sole justification" for the 150 day deadline, see J.A. at 126, contending that the 150 day deadline was "necessary to verify the requisite signatures on the petition and to

_____

**1** General elections are held on the Tuesday following the first Monday in November. Consequently, the "second Tuesday in June before the November election" is 150 days prior to the general election.

**2** In his complaint, Wood also alleged that his Equal Protection rights were violated by the imposition of a shorter deadline (74 days) for Presidential and Vice Presidential candidates, see Va. Code Ann. § 24.2-543, than for independent candidates for the Senate. The district court did not address this claim in its opinion below, and Wood has not raised it on appeal. Accordingly, we do not address this claim.

3

print the ballots for the general election," J.A. at 120. The district court, believing that its decision was "controlled" by our opinion in Cromer, rejected the Commonwealth's rationale, holding that, under Cromer, where a state's only asserted justification for a deadline is administrative convenience, a deadline longer than ninety days prior to the general election is per se unconstitutional.

II.

A.

In Anderson, the Supreme Court fashioned the test that must be applied when determining whether a state's ballot access laws pass constitutional muster. Specifically, in the course of striking down Ohio's 229 day filing deadline for independent presidential candidates, which required those candidates to submit statements of candidacy and nominating petitions 229 days before the general election and 75 days before the party primaries, see 460 U.S. at 783 n.1, as violative of the "voting and associational rights" of an independent candidate and his supporters, see id. at 782, the Court instructed, generally, that a court

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the [c]ourt must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

Id. at 789; see also Timmons v. Twin Cities Area New Party, 117 S. Ct. 1364, 1370 (1997). The Court concluded that, under this standard, "the `extent and nature' of the burdens Ohio . . . placed on the voters' freedom of choice and freedom of association, in a[ ] [presidential] election of nationwide importance, unquestionably outweigh the

4

State's minimal interest in imposing [the] March deadline." <u>Anderson</u>, 460 U.S. at 806.

In applying the <u>Anderson</u> standard, it must be determined whether the challenged electoral law places "severe" restrictions on the First and Fourteenth Amendment rights of candidates and voters, or, rather, imposes only "reasonable, nondiscriminatory restrictions" on those rights. <u>See Burdick</u> v. <u>Takushi</u>, 504 U.S. 428, 434 (1992). Where the restrictions are "severe," they may be upheld only if they are "narrowly drawn to advance a state interest of compelling importance." <u>See Burdick</u>, 504 U.S. at 434; <u>see also Timmons</u>, 117 S. Ct. at 1370; <u>Fishbeck</u> v. <u>Hechler</u>, 85 F.3d 162, 164 (4th Cir. 1996). However, where the restrictions are "reasonable" and"nondiscriminatory," "`the State's important regulatory interests are generally sufficient to justify' the restrictions," <u>Burdick</u>, 504 U.S. at 434, as "the State's asserted regulatory interest need only be `sufficiently weighty to justify the limitation' imposed" on the candidates' and voters' rights, <u>see</u> <u>Timmons</u>, 117 S. Ct. at 1372 (quoting <u>Norman</u> v. <u>Reed</u>, 502 U.S. 279, 288-89 (1992)). Indeed, "when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights," a particular restriction "will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme." <u>Burdick</u>, 504 U.S. at 441.

We applied the <u>Anderson</u> standard in <u>Cromer</u> to invalidate South Carolina's 200 day filing deadline for independent candidates for the state legislature, which required such candidates to formally declare their candidacy 200 days before the general election and 70 days before the party primaries. There, we first considered the "two most critical burdens on independent candidacies: sheer length of time between the filing date and general election (as much as seven months), and simultaneous filing deadlines for independents and primary candidates." <u>Cromer</u>, 917 F.2d at 826 n.4. We found these burdens to be "practically total," concluding that, by requiring independent candidates to make the "draconian decision" of whether or not to run before the party candidates had even been selected, the 200 day filing deadline "effectively cut[ ] off the opportunity for such [independent] candidacies to develop at a time that pre-dates the

5

period during which reasons for their emergence are most likely to occur." Id. at 823-24. We then considered the only two interests asserted by South Carolina, which were its interests in the "equal treatment" of independent and party candidates and "feuding and factionalism reduction," id. at 824, finding these interests "lacking in significance," id. Balancing the "essentially total" burdens on independent candidacies against the two "insignificant" state interests, we concluded that it was "obvious" that we would find the asserted state interests "substantially outweighed" by the burdens imposed on the voters' rights, and "the filing requirement therefore unconstitutional." Id. at 825.

Even though South Carolina never asserted an interest in administrative convenience, and even though, absent any consideration of administrative convenience, we thought it clear that South Carolina's 200 day filing deadline would be unconstitutional, we nonetheless undertook to discuss what we characterized as "the most obvious state interest justifying any pre-election filing deadline[,] . . . the need to provide a decent interval for administrative processing and for voter education." See id. at 825. And we even went so far as to offer our view that

> the need to provide a decent interval for administrative processing and for voter education . . . surely could[justify a state's] require[ment] [that] independent candidates . . . declare and perfect their candidacies 60 to 90 days before a general election[, but] [b]eyond that period, some other interest would seem to be needed to justify an earlier declaration of independent candidacy.

Id. at 825.

The district court concluded that this last statement in particular "controlled" the case sub judice, even though at issue here is an independent candidate filing deadline which, unlike those in Anderson and Cromer, is sixty days after the filing deadline for party primary candidates, which is the same day as the party primaries, and which is 50 days closer to the general election than the deadline invalidated in Cromer and 79 days closer to the general election than that struck down in Anderson. Thus, rather than analyze the Anderson factors,

6

the district court simply reasoned that, even assuming that the Commonwealth's filing deadline was not a "severe" restriction, see J.A. at 127, under Cromer, any filing deadline greater than 90 days would be per se unconstitutional where the only asserted state interest was in administrative convenience. As the district court said,

> Cromer is the controlling case. Cromer establishe[d] 90 days as the outside limit for filing deadlines absent some explanation additional to "administrative processing and voter education[,]"

J.A. at 127. Accordingly, the court ordered that

> [t]he Commonwealth of Virginia is hereby ENJOINED from enforcing the declaration of candidacy and petition filing deadline imposed on independent candidates for the office of United States Senator, as established by Va. Code Ann. § 24.2-507(1). The Commonwealth shall designate a new filing date, not to precede the general election date by more than 90 (ninety) days.

J.A. at 115.

Although the district court can hardly be faulted for relying upon our statements in Cromer, it is evident that those statements were obiter dictum. In Cromer, the only issue before us was the constitutionality of South Carolina's 200 day filing deadline, and, as noted, the state had not even asserted administrative necessities in support of its filing deadline. Our veiled reference to a possible bright-line rule that a state's administrative needs could not justify a filing deadline of more than 90 days prior to the general election, see id. at 825 ("Beyond [a 60 to 90 day] period, some other interest would seem to be needed to justify an earlier declaration of independent candidacy.") (emphasis added), therefore, was simply dicta, which we now disavow. See Timmons, 117 S. Ct. at 1370 ("No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms.").

Accordingly, the district court mistakenly, albeit understandably, erred in relying upon the 90-day bright line rule referenced in Cromer

7

to invalidate Virginia's 150 day filing deadline, and in failing to apply, in the first instance, the balancing test articulated by the Supreme Court in <u>Anderson</u>.

B.

The Commonwealth urges that, rather than remand this case to the district court for reconsideration under <u>Anderson</u>, we should decide, on the record before us, that judgment in favor of the Commonwealth is appropriate, and so direct the district court. We share the Commonwealth's skepticism as to whether, as a matter of both law and fact, Wood can show that the 150 day deadline imposes any cognizable burden on his independent candidacy, much less a "severe" one. Nonetheless, we believe that a remand to the district court, to further develop the factual record, is appropriate.

The Commonwealth's 150 day deadline imposes significantly less burdens on independent candidacies than did South Carolina's 200 day deadline which we invalidated in <u>Cromer</u>. The "two most critical burdens" that South Carolina imposed upon independent candidates, <u>see Cromer</u>, 917 F.2d at 826 n.4, are either not present in the Commonwealth's scheme, or present to a significantly lesser extent. It goes without saying that the Commonwealth's 150 day deadline imposes less "sheer length of time between [the] filing date and [the] general election" than did South Carolina's 200 day deadline. <u>See id</u>. And, whereas South Carolina required "simultaneous filing deadlines for independents and primary candidates," <u>id</u>., thereby preventing independent candidates from even knowing against whom they would be running, <u>id</u>. at 823, the Commonwealth does not require independent candidates to file until sixty days after party primary candidates, on the day of the primary election. By this time, Virginia's field of primary candidates is known, and, as the district court found, "there [is] an excellent, if not inescapable, indication of who the [actual] party nominees [will] be," J.A. at 125.

Moreover, both the Supreme Court and this court have commented approvingly on or actually upheld in related contexts filing deadlines identical to or more burdensome than that imposed by the Commonwealth.

8

In Jenness v. Fortson, 403 U.S. 431 (1971), the Supreme Court approved a filing deadline virtually indistinguishable from that now employed by the Commonwealth. There, the Court upheld Georgia's requirement that, by the second Wednesday in June preceding a November election, independent candidates submit a nominating petition signed by five percent of the total number of eligible voters in the previous election, see id. at 433-34. Although the Court's holding specifically addressed only the constitutionality of Georgia's signature requirement, in the course of upholding that requirement, the Court observed that Georgia had "not fix[ed] an unreasonably early filing deadline for candidates not endorsed by established parties." Id. at 438. See also Burdick, 504 U.S. at 436 (noting that Hawaii's requirement that independent candidates participate in a "nonpartisan primary" and, thus, submit nominating papers sixty days before the primary, constituted "easy access to the ballot until the cutoff date").

And, in Hess v. Hechler, 925 F. Supp. 1140 (S.D.W.Va. 1995), aff'd sub nom., Fishbeck v. Hechler, 85 F.3d 162 (4th Cir. 1996), we upheld a more onerous filing deadline than that herein attacked. See also Socialist Workers Party v. Hechler, 890 F.2d 1303 (4th Cir. 1989), cert. denied, 495 U.S. 932 (1990). There, we faced a challenge to West Virginia's primary eve filing deadline, which required independent and third party candidates to submit nominating petitions on the Monday preceding the second Tuesday in May. In adopting by published opinion the district court's "thorough reasoning," see Hechler, 85 F.3d at 165, we characterized West Virginia's filing deadline as a "slight burden" on the plaintiffs' First and Fourteenth Amendment rights, see Hechler, 925 F. Supp. at 1154, ultimately holding that, as such, it constituted a "reasonable restriction on [the] plaintiffs' constitutionally protected voting and political association rights," id. at 1155. Although we only addressed West Virginia's restrictions as they applied to third party candidates, see id. at 1154 ("[T]he court . . . does not address the constitutionality of West Virginia's statutory scheme insofar as it applies to independent candidates."), the case is nonetheless instructive as to the extent of the burden that an early filing deadline imposes upon a candidate and his supporters. Indeed, the only rationale that Wood advances to distinguish Hechler from the case now before us, that "third parties . . . have the potential to establish long-term party control over state government," see Appellee's Br. at 18 n.7, addresses only "the state's

9

heightened interest" in regulating third parties, see id., and not the burden that a particular restriction imposes upon the candidates.

Finally, in Cromer, we all but approved, albeit implicitly, the Commonwealth of Virginia's filing deadline now under attack. See Va. Code Ann. § 24.1-166(B)(1) (1985), amended by, § 24.2-507 (1993). Thus, we declared the dissent's assertion that our holding in that case called into question the electoral laws of thirty-two states, including Virginia, see Cromer, 17 F.2d at 828-29 (Wilkinson, J., dissenting), to be "unfounded," see id. at 825 n.4. Instead, we concluded, "only six states other than South Carolina," Virginia not among them, contained the "two most critical burdens upon independent candidacies" -- i.e., the 200 days between the filing deadline and the general election, and the requirement that independents and primary candidates file simultaneously -- upon which our invalidation of the South Carolina law rested, see id., and, thus, that only the electoral laws in those six states would be called into question by our decision.

In light of this caselaw, we doubt whether Wood can show that the Commonwealth's 150 day filing deadline imposes any significant burden on the constitutional rights of Wood and his supporters, much less a "severe" burden. Rather, it appears to us based on the limited record before us that the Commonwealth has simply chosen "reasonable, nondiscriminatory restrictions," treating independent and party candidates at least equally in all cases, and, in many cases, allowing independent candidates more time to file their declarations and petitions than candidates of political parties. Cf. Burdick, 504 U.S. at 438 ("[W]e have repeatedly upheld reasonable, politically neutral regulations that have the effect of channelling expressive activity at the polls.").

Nonetheless, we decline, on the record before us, the Commonwealth's invitation to conduct the Anderson balancing ourselves. In Anderson, the Supreme Court instructed that a fact-specific inquiry be undertaken, in which the severity of the restrictions that a ballot access law imposes on voters and candidates and the state's asserted interests in the particular electoral restrictions are evaluated and weighed against each other. Although the caselaw appears to foreclose any claim that the Commonwealth's 150 day filing deadline imposes any substantial burden on access to the ballot, the factual

10

record on this score remains largely undeveloped. And, as the Commonwealth conceded at oral argument, the record before us is likewise virtually barren of any evidence of the strength or legitimacy of the Commonwealth's interests, administrative or otherwise, in the 150 day deadline.

Accordingly, the case is remanded to the district court for further factual development both as to the burdens that the 150 day deadline imposes upon independent candidates and their supporters, and as to the interests of the Commonwealth in imposing that deadline, and for the district court to apply, in the first instance, the test mandated by the Supreme Court in <u>Anderson</u>. On remand, the district court should not limit the Commonwealth's interests to that in administrative convenience, but should consider all interests that the Commonwealth chooses to assert in defense of its 150 day filing deadline.

<u>REVERSED AND REMANDED</u>

11