**Luther EDMONDS, Plaintiff,**

**v.**

**James S. GILMORE, et al. Defendants.**

**No. CIV. 2:97CV591.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 15, 1997.

Luther C. Edmonds, Virginia Beach, VA, for Plaintiff.

Rita Marie Sampson, Atty. Gens. Office of VA, Richmond, VA, for Defendants.

### ORDER and OPINION

MORGAN, District Judge.

A hearing on the defendants' Motion for Summary Judgment and Motion for Sanctions and plaintiff's Motion for Preliminary Injunction was conducted on October 9, 1997. At the conclusion of the hearing, the Court **GRANTED** defendants' Motion for Summary Judgment, **DENIED** plaintiff's Motion for a Preliminary Injunction and **DENIED** defendant's Motion for Sanctions. The Court now supplements its ruling with the following written Order and Opinion.

### Factual and Procedural History

On June 16, 1997, plaintiff Luther Edmonds ("Edmonds") filed a Complaint alleging that he had been unlawfully denied access to the ballot for the November 4, 1997 Virginia House of Delegates race. He alleged that he had completed a Voter Registration Application to change his residence from 7136 Hunters Chase, Norfolk, Virginia in the 87th House District to 5227 Poplar

Hall Drive, Norfolk, Virginia in the 90th House District on May 29, 1997, thereby entitling him to run in the 90th House District race.

Edmonds alleges that he filed candidate petitions on June 10, 1997 containing the signatures of more than 125 registered voters, as required by Virginia statute. On the majority of the petitions, Edmonds acted as the required "qualified voter" witness of the signatures. At 5:15 P.M. on that same day, defendant John R. Doyle, III of the Norfolk Electoral Board notified Edmonds that his petitions were deficient because Edmonds was not a qualified voter in the 90th District authorized to witness the petitions. Relying on Virginia statutes, the defendants notified Edmonds that his attempt to register his address change could not be completed until the registration lists were reopened on June 11, 1997, thus preventing him from serving as a voter qualified to witness the signatures on the candidate petitions. Based on defendants' interpretation of the statute, the petitions on which Edmonds acted as the witness were disqualified. Because Edmonds, without the disqualified petitions, failed to satisfy the 125 signature requirement, the State Board of Elections refused to include him on the November ballot.[1]

The parties appeared before this Court on September 9, 1997 on defendants' Motion to Dismiss. In addition, plaintiff moved the Court for permission to file his Amended Complaint. In his Amended Complaint, plaintiff sought both injunctive relief and one million ($1,000,000) from defendants, in their official capacities, to remedy his alleged harm. He alleged that defendants violated 42 U.S.C. § 1973c, the Equal Protection Clause of the United States Constitution, the First Amendment to the United States Constitution and a Virginia conspiracy statute. Defendants sought to dismiss all Counts of the Amended Complaint for failure to state claims upon which relief could be granted.

At the hearing, the plaintiff voluntarily dismissed his monetary claims against the defendants and Counts II and IV of the Amended Complaint. Accordingly, this Court dismissed those claims with prejudice and ordered plaintiff to file a Second Amended Complaint, if he wished to do so, on or before September 15, 1997. Further, this Court ordered defendants to respond on or before September 22, 1997 to any Second Amended Complaint filed by plaintiff. Plaintiff timely filed a Second Amended Complaint and defendants responded with an Answer, a Motion for Summary Judgment, and a Motion for Sanctions. Plaintiff has timely responded to the Motion for Summary Judgment and the Motion for Sanctions.

## I. Motion for Summary Judgment

### Standard of Review

District courts may enter summary judgment only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990) (en banc) *cert. den.*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The facts and inferences to be drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir.1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

In order to successfully defeat a motion for summary judgment, a plaintiff cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." *Doyle v. Sentry Insur.*, 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories or other evidence to show genuine issues for trial. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When plaintiff fails to make a sufficient showing establishing an essential element of their case and the plaintiff bears the burden of proof on that issue, "there is

---

1. The Board also noted that even if Edmonds was a qualified witness only 105 of the required 125 signatures were themselves qualified voters in the 90th District.

'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other fact immaterial ." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2551; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### A. Count I—Violation of the Voting Rights Act of 1965

#### Summary of Arguments

Edmonds alleges that his constitutionally protected right to participate as an independent candidate has been infringed, but he does not challenge the constitutionality of the Virginia election statutes used to deny him a place on the November ballot. Thus, his only recourse is to allege that the election statutes or procedures were in some way changed through their particularized application to his case. While he fails to make any such allegation in the Second Amended Complaint, Edmonds charges, in his Memorandum in Opposition to Defendants' Motion for Summary Judgment, that "there has been a 'change' in the application of 24.2–506 of the Code of Virginia, as amended, and related standards, practices and procedures which have not been precleared, pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. Section 1973c." Specifically, he alleges that the 125 qualified voter signature requirement, the informal appeal procedures and defendants' method of determining and counting all signatures on the petitions were not precleared under the Act. He notes that a change, for purposes of the Voting Rights Act, can be formal or informal and that section 1973c was intended to reach even minor changes in voting statutes or procedures.

The defendants respond that the United States Attorney General approved Virginia's voting provisions on October 12, 1993 and attach a supporting letter from the Department of Justice as evidence of that approval. Defendants also present an affidavit from the Secretary of the State Board of Elections, Bruce Meadows, verifying that "all of the statutory provisions called into question by plaintiff's suit have been precleared at least

twice." Meadows' Affidavit at 3. Because Edmonds has not alleged an adequate "change" which triggers the application of section 1973c, defendants argue that summary judgment must be granted as to the Voting Rights Act claim.

### Analysis

The Voting Rights Act of 1965, 42 U.S.C. § 1973c, requires that certain jurisdictions, such as Virginia, seek preclearance of changes in "any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect" on November 1, 1964. Such preclearance can be obtained either by the institution of a declaratory judgment suit in the District Court for the District of Columbia or by the submission of proposed changes to the Attorney General of the United States for her review. 42 U.S.C. § 1973c. A plaintiff can challenge election laws or procedures in one of two ways: (1) allege that a change in an election statute or procedure has not been effectively precleared by the District Court for the District of Columbia or by the Attorney General or (2) challenge the constitutionality of a precleared statute or procedure. *See Allen v. State Board of Elections,* 393 U.S. 544, 549–50, 89 S.Ct. 817, 823–24, 22 L.Ed.2d 1 (1969). Congress intended section 1973c to have "the broadest scope possible," *id.* at 566–67, 89 S.Ct. at 832–33, and defendants admit that rules affecting Virginia candidacy requirements and qualifications must be precleared by the Attorney General.

Virginia law provides that "[e]ach signature on the petition shall have been witnessed by a person who is himself a qualified voter for the office for which he is circulating the petition." Va.Code Ann. § 24.2–506. Furthermore, a candidate must present at least 125 signatures of qualified voters to qualify for ballot placement in a House of Delegates race. *Id.* A 'qualified voter' is defined as a person at least eighteen years of age who is a resident of both the Commonwealth of Virginia **and** "of the precinct in which he offers to vote." Va.Code Ann. § 24.2–101 (emphasis added).

■ The Court **FINDS** that the Virginia voting statutes were properly precleared and that the application of those laws to plaintiff did not constitute a "change" under the Voting Rights Act. The defendants have presented evidence in the form of Meadows' Affidavit and a Department of Justice letter firmly establishing that the statute had been precleared. Furthermore, the evidence is undisputed that Edmonds was not, at the time that he circulated petitions and witnessed signatures, a qualified voter within the meaning of § 24.2–101. The mere expectation of becoming a qualified voter is insufficient to meet the witness requirement specified in § 24.2–506.

Plaintiff's allegation that all signatures on his petitions should be counted also fails because not all of the signatures were obtained from voters in the 90th House District. Plaintiff asserts that he met the 125 signature requirement because he had properly obtained the signatures of 105 voters registered to vote in the 90th House District and 35 registered voters who were registered in other Districts. He alleges that § 24.2–506 does not require that the signatures on a candidate's petition be registered voters of the House District for which the candidate is circulating the petition, but rather that they be registered voters in some House district. *See* Memorandum in Opposition at 9.

■ That argument is meritless. Edmonds fails to present any evidence that his interpretation has previously been recognized by the state of Virginia or that the statute has been applied differently to other candidates similarly situated. The defendants present the Supplemental Affidavit of Audrey S. Piatt, Deputy Secretary of the State Board of Elections, who asserts that Candidate Information Bulletins clearly state that only registered voters within the district may sign candidate petitions. She further notes that "[t]his administrative interpretation of § 24.2–506 was well established in Virginia election law when Title 24.2 was recodified and re-enacted in 1993, and subsequently when Title 24.2 was precleared by

the Department of Justice on October 12, 1993." The General Assembly is presumed to be cognizant of a state agency's construction of a particular statute and implicitly approves the construction by refusing to legislatively alter it. *See Peyton v. Williams,* 206 Va. 595, 600, 145 S.E.2d 147 (1965) (noting that "[w]hen [the administrative interpretation] has long continued without change the legislature will be presumed to have acquiesced therein"). In addition, a plain reading of § 24.2–506 establishes that a petition signer must reside in the House District for which he signed a petition. Therefore, the defendants correctly assert that signatures of registered voters who were not registered to vote in the 90th House District were properly excluded.

Even if the Court were to accept Edmonds' argument that some signatures of registered voters in the 90th House District were not properly counted by the defendants, he cannot satisfy the 125 signature requirement. At the hearing, testimony from plaintiff's own witness established that plaintiff could present, at most, 122 valid signatures.[2]

Plaintiff next alleges that certain qualified voters accompanied him to circulate petitions and "personally witnessed the persons signing of the plaintiff's Petitions of Qualified Voters: Dexter Blackstock, Shirley Freeman, Melvin L. Holloman and Evelyn Spencer." Memorandum in Opposition at 3. He includes affidavits from each of these individuals as supporting evidence. The Court, however, does not find this evidence persuasive or relevant to the "change" requirement. The petitions required a witness signature, and plaintiff, not those alleged witnesses, signed the majority of the petitions as the required witness.

■ Plaintiff argues that the informal appeals process before the State Board of Elections was not a change precleared by the Department of Justice. While he makes this facial assertion, he offers no evidence or argument to support it. Defendants rebut the claim by arguing, in Audrey Piatt's Supplement Affidavit, that "the informal appeal pro-

---

**2.** At the hearing, plaintiff voluntarily withdrew his claim that certain defendants, "fraudulently and illegally manipulated the number of signa-

tures on the petitions," so that plaintiff would neither have the required 125 signatures, nor meet the 7:00 filing deadline.

cedures are intended to assist the aspiring candidate, did not change any aspect of the eligibility and qualification requirements for independent candidates, and in the Board's judgment were not required to be precleared."

■ The Court agrees with the defendants that the informal appeals process was not a "change" covered under the Voting Rights Act. An appeals procedure not precleared is simply not enforceable, a result which would not aid plaintiff. *See Lopez v. Monterey Co.,* 519 U.S. 9, ——, 117 S.Ct. 340, 347, 136 L.Ed.2d 273 (1996). The purpose of preclearing "changes" is to ensure that candidates are not adversely affected by election variances that may illegally discriminate against the candidate. If anything, the appeals process assisted plaintiff by giving him an opportunity to respond to the defendants' application of state voting laws.

Considering the letter from the Department of Justice stating that Virginia's voting statutes and procedures have been preapproved, Meadows' affidavit to that effect, and the plaintiff's failure to present sufficient evidence of a cognizable "change," the Court GRANTS the motion for summary judgment as to Count I.

### B. Count II—The First Amendment Claim.

#### Summary of Arguments

In his Second Amended Complaint, plaintiff alleges that defendants violated his First Amendment rights. Plaintiff argues that the June filing deadline imposes severe burdens on independent candidates. He alleges that "the opportunity to run as an independent candidate for the office in question is effectively cut off on June 10, five months before the November general election, which of course, means that the opportunity of voters to coalesce around such candidacy is cut off at the same time." Memorandum in Opposition at 14.

Defendants argue that a recent Fourth Circuit opinion bars plaintiff's First Amendment claim. In *Wood v. Meadows,* 117 F.3d 770 (4th Cir.1997), the Fourth Circuit remanded a case where the District Court had

concluded that the identical filing deadline for independent U.S. Senate candidates violated the First Amendment. There, the Fourth Circuit noted that a court

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It must then identify and evaluate the precise interests put forward by the State as justification for the burden imposed by its rule. In passing judgment, the court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interest make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* at 772 (*quoting Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). After analyzing the facts of the case before it and the principles enunciated in *Anderson,* the court further noted that:

> In light of this caselaw, we doubt whether Wood can show that the Commonwealth's 150 day filing deadline imposes any significant burden on the constitutional rights of Wood and his supporters, much less a "severe" burden. Rather it appears to us based on the limited record before us that the Commonwealth has simply chosen "reasonable, nondiscriminatory restrictions," treating independent and party candidates at least equally in all cases, and in many cases, allowing independent candidates more time to file their declarations and petitions than candidates of political parties.

*Id.* at 775–76. The Fourth Circuit remanded the case so that a further factual record could be developed to determine whether plaintiff would satisfy the *Anderson* test that the District Court failed to consider. *Id.* at 776.

■ Analyzing plaintiff's claims under the *Anderson* test, the Court **FINDS** the June filing deadline imposed on plaintiff did not violate his First Amendment rights. While the Fourth Circuit in *Woods* did not explicitly recognize the June deadline as constitu-

tional, that Court suggested that a plaintiff would have to show substantial hardship to succeed on the merits. Plaintiff has failed to meet that burden. The major party candidates must meet deadlines as severe or more severe than the June deadline that independent candidates were required to meet. While options are limited if an independent candidate wishes to enter a House of Delegates race at a date later than the June filing deadline, potential major party candidates are similarly restricted by party processes that select the party candidate before June.[3]

Under the *Anderson* analysis, the state has presented a number of legitimate justifications for the June filing deadline including ensuring that petitions can be verified, allowing candidate disqualification appeals to be heard and facilitating the printing of ballots before the mid-September absentee ballot deadline specified in Va.Code Ann. § 24.2–612. The Court is satisfied that the responsibilities of local and state election officials are as great or greater in a Virginia House of Delegates race than they are in a United States Senate race.

The Court notes that the June deadline minimally burdens plaintiff and other similarly situated independent candidates. Plaintiff could have begun collecting signatures on January 1 and needed only to obtain 125 signatures, far fewer than the 14,000 signatures that the Senate candidate in *Woods* had to obtain. Accordingly, the Court **GRANTS** the defendants' Motion for Summary Judgment on the First Amendment claim.

## II. Preliminary Injunction

As the Court noted at the September 9, 1997 hearing, the only remaining relief that plaintiff seeks is equitable relief, the placing of his name on the November 4, 1997 ballot. By motion dated August 21, 1997, plaintiff seeks a preliminary injunction from this Court. While he does not specify the relief requested in that motion, his Second Amended Complaint asks the Court to "issue an injunction requiring the defendants and their agents, subordinates, successors or assigns to place plaintiff's name on the November 4, 1997 ballot for the House of Delegates for the 90th District."

### *Preliminary Injunction Standard*

 To obtain a preliminary injunction or temporary restraining order, the traditional standard requires the evaluation of four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

*Manning v. Hunt,* 119 F.3d 254, 1997 WL 381581, *8–9 (4th Cir.1997) (quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812 (4th Cir.1991)). Plaintiff bears the burden of establishing that the Court should grant a preliminary injunction or temporary restraining order. *See Manning,* 119 F.3d 254, 263 (citing *Direx,* 952 F.2d at 812). The Fourth Circuit has modified the test and now follows the balance-of-hardship test. *See Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manu. Co., Inc.,* 550 F.2d 189, 195 (4th Cir.1977); *see also Manning,* 119 F.3d 254, 263–64. The first step is the Court must "balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." *See Blackwelder,* 550 F.2d at 195; *see also Manning,* 119 F.3d 254, 263. If that balance is in favor of the plaintiff, then the likelihood of success of the claim is displaced and the plaintiff must only show that questions raised concerning the merits are "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation

---

**3.** At the hearing, the Court noted its concern that the June deadline effectively limited the ability of potential candidates to enter races in response to changed political factors after the major party candidates had been selected. While Virginia law requires major party primary candidates to sign a "statement that, if defeated in the primary, his name is not to be printed on the ballots for that office for the succeeding general election," Va.Code Ann. § 24.2–520, the Court notes its reservations about the effect of such a requirement where the major party candidate is chosen by means other than a primary.

and thus for more deliberate investigation." *See Blackwelder*, 550 F.2d at 195. The importance of the merits of the case increase as the "probability of irreparable injury diminishes." *See id.*

### Analysis

■ In weighing the four factors, the Court notes the substantial likelihood of irreparable harm to the plaintiff; if his name is not included on the November 4, 1997 ballot, he will suffer the name recognition and voting convenience problems that write-in candidates must endure. The Court also recognizes that members of the public who wish to vote for plaintiff and wish to have him represent them as their Delegate have a substantial interest in having him placed on the November ballot. While such potential supporters could vote for plaintiff as a write-in candidate, his chances of election as a write-in candidate, as a practical matter, are substantially less than his chances as a ballot candidate.

Nonetheless, plaintiff's request for preliminary injunction must fail because, as noted infra, he is unlikely to succeed on the merits of the case. In addition, the harm that defendants would suffer from a requirement that plaintiff's name be placed on the ballot increases as the November election draws nearer. Plaintiff has inexplicably waited four months after filing his initial Complaint to prosecute his motion. Accordingly, plaintiff's Motion for a Preliminary Injunction is **DENIED**.

### III. Motion for Sanctions

#### Summary of Arguments

Defendants have filed a Motion for Sanctions alleging that plaintiff's claims warrant sanctions by this Court to deter similar behavior in the future. Defendants argue that they properly provided plaintiff with a "safe harbor" letter notifying him that his suit for monetary damages against defendants in their official capacities, his inclusion of defendant Gilmore, and his Equal Protection claim were frivolous, yet he failed to withdraw those claims until the hearing. Defendants also argue that the Second Amended Complaint suffers similar defects because it seeks

injunctive relief against the former Attorney General, Gilmore, and accuses the defendants of "fraudulently and illegally manipulating signatures."

Plaintiff responds that he voluntarily dismissed some of the claims and now moves the Court to voluntarily dismiss defendant Gilmore from the lawsuit. He also alleges that he performed adequate pre-filing research.

### Analysis

■ Rule 11 provides:

that [1] to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good further argument for the extension, modification, or reversal of existing law, and that [2] it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*In re Keegan Management Co.*, 78 F.3d 431, 433 (9th Cir.1996) (*citing* Fed.R.Civ.P. 11). District courts should use an objective test in determining whether sanctions are warranted. *See id.* at 434; *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469 (2d Cir.1988), *rev'd on other grounds*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). Under the objective standard, the district courts should impose sanctions whenever a pleading has been

interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Calloway*, 854 F.2d at 1469; *see also Davis v. Hudgins*, 896 F.Supp. 561, 573 (E.D.Va.1995) ("Rule 11 requires an unrepresented party or a represented party's attorney to conduct a pre-filing investigation of the legal and factual basis for his claim.... For a complaint to be reasonable, the factual investigation must have uncovered 'some information to support the allegations in the complaint.'" (citations omitted)). Further, "courts should avoid

hindsight and resolve all doubts in favor of the signor." *Calloway,* 854 F.2d at 1469–70. "Rule 11 is violated 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents....'" *Id.* at 1470 (citations omitted); *see also Davis,* 896 F.Supp. at 573.

■■■■ When the court is considering sanctions on a factual claim, "the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated in pretrial proceedings or at trial." *Calloway,* 854 F.2d at 1470. If there is such a basis, an inquiry into an attorney's pre-filing investigation is unnecessary. *See id.* If there is no such basis shown,

> the district court must then scrutinize the objective reasonableness of the attorney's pre-filing inquiry and the basis for the claim developed by the inquiry. If the inquiry was objectively reasonable under the circumstances and disclosed a reasonable factual basis for the claim, then sanctions are not appropriate. On the other hand, if the attorney either failed to make an objectively reasonable inquiry or pursued a claim for which no basis was disclosed by such an inquiry, then sanctions are appropriate.

*Id.*

■■■■ There are several factors the district court should consider in determining whether sanctions are warranted. First, in evaluating a party's factual inquiry

> a court may consider factors such as the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual support of the document; the feasibility of a pre-filing investigation; whether the signing attorney accepted the case from another member of the bar; the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery. In determining the reasonableness of a legal inquiry, a court may consider the time available to the attorney; the plausibility of the legal view contained in the document; the pro se

status of a litigant; and the complexity of the legal and factual issues raised.

*Smith v. Our Lady of the Lake Hospital,* 960 F.2d 439, 444 (5th Cir.1992). Further, "unartful pleading, such as through a vague or conclusory complaint, is irrelevant to the factual and legal inquiry required under Rule 11." *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991).

■■■■ The Court **FINDS** that plaintiff has articulated objectively reasonable claims. While the Court has ruled that his claims are, as a matter of law, insufficient to survive the defendants' Motions to Dismiss and for Summary Judgment, the circumstances of his disqualification and the importance of safeguarding the electoral process outweigh defendants' arguments. In addition, plaintiff has voluntarily withdrawn claims upon which he could not succeed on the merits. For these reasons, the defendants' Motion for Sanctions is **DENIED.**

The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record.

It is so **ORDERED.**