George R. "Tex" WOOD, Plaintiff,

v.

Cameron QUINN, Secretary, State Board of Elections, Defendant.

No. Civ.A. 3:00CV335.

United States District Court, E.D. Virginia, Richmond Division.

July 17, 2000.

George R. Wood, Stuart, VA, plaintiff pro se.

James Walter Hopper, Office of Attorney General of VA, Richmond, VA, Mark Lawrence Earley, Office of the Attorney General, Richmond, VA, for Cameron Quinn, Secretary of the Board of Elections, Commonwealth of Virginia, defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER is before the Court on the following pending Motions: (1) a Motion for Summary Judgment, brought by Defendant CAMERON QUINN (herein "Quinn"); (2) a cross-Motion for Summary Judgment, brought by Plaintiff GEORGE R. "TEX" WOOD (herein "Wood"); and (3) a Motion to Expedite Motion for Summary Judgment, brought also by Wood. For the reasons discussed below, these motions are resolved as follows:

1. Quinn's Motion for Summary Judgment is GRANTED.

2. Wood's Motion for Summary Judgment is DENIED.

3. Wood's Motion to Expedite Motion for Summary Judgment is GRANTED.

## I. Background

This case concerns the efforts of an independent candidate to get onto Virginia's ballot for the upcoming race for the office of United States Senator. Wood, a resident of Stuart, Virginia in Patrick County, has collected signatures from each of Virginia's 11 Congressional districts in an attempt to qualify for inclusion on the November 7, 2000 ballot as an independent candidate for Senate. (Compl.¶ 1.). Wood takes issue with two provisions in the Code of Virginia that apply to independent candidates for office. Virginia Code § 24.2–506 states:

The name of any candidate for any office, other than a party nominee, shall not be printed upon any official ballots provided for the election unless he shall file along with his declaration of candidacy a petition therefor, on a form prescribed by the State Board, signed by the number of qualified voters specified below after January 1 of the year in which the election is held and listing the residence address of each such voter. **Each signature on the petition shall have been witnessed by a person who is himself a qualified voter for the office for which he is circulating the petition and, in the case of a statewide office, is a resident of the same or a contiguous congressional district as the voter whose signature is witnessed,** and whose affidavit to that effect appears on each page of the petition.

Va.Code Ann. § 24.2–506 (Mickie 1950) (emphasis new). Virginia Code § 24.2–506(1) requires independent candidates for the United States Senate to submit at least 10,000 signatures, including at least 400 signatures from each of the eleven Congressional districts. *Id.* § 24.2–506(1). Wood has failed to collect at least 400 signatures in two of the eleven districts. Wood brought a Complaint naming Quinn in her capacity as Secretary of the State Board of Elections (herein "Virginia")[1] on May 26, 2000, seeking declaratory and injunctive relief. R. at 1. The Court denied Wood's Motion for Preliminary Injunction on June 22, 2000. R. at 13. The Court granted Wood's Motion to Expedite Complaint for Declaratory and Injunctive Relief on that same day. *Id.*

Quinn brought her Motion for Summary Judgment on June 7, 2000. R. at 6. Wood brought his own Motion for Summary Judgment and a Motion to Expedite Mo-

---

1. For the purposes of this Memorandum Opinion, the Defendant is referred to various-

ly as "Quinn" and "Virginia."

tion for Summary Judgment on June 23, 2000. R. at 14–17.

## II. Standard of Review

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina. Agr. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). According to the Fourth Circuit,

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e).... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (emphasis original). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, if a motion for summary judgment is "properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on mere allegations or denials of the pleadings ... [but] must respond by affidavits or otherwise and present specific facts demonstrating a triable genuine issue of material fact." *Garrett v. Gilmore,* 926 F.Supp. 554, 555 (W.D.Va.1996), *aff'd,* 103 F.3d 117 (4th Cir. 1996).

## III. Analysis

### A. Cross–Motions for Summary Judgment

Although the Court has sympathy for Wood in light of his apparently earnest desire to present himself to Virginia voters as an alternative candidate for the United States Senate, Wood has misinterpreted or misunderstood both the case law applicable to ballot access measures and the language of the provisions at issue. Wood therefore cannot prevail. As Virginia notes correctly, the Supreme Court has directed courts assessing First and Fourteenth Amendment challenges to ballot access restrictions to assess the burden placed on candidates for office, and also the interests of the state that may justify that burden. (Def.'s Mem. at 2, *citing Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).). Reasonable, nondiscriminatory restrictions that serve important regulatory interests should generally be upheld. *Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). In assessing the burden faced by Wood and other independent candidates in obtaining access to the Virginia ballot, it becomes necessary to dispel the notion that the provisions at issue preclude independent candidates from collecting signatures in all eleven of Virginia's Congressional districts. As the Court noted in its denial of Wood's Motion for Preliminary Injunction, the language of § 24.2–506 does not require independent candidates to personally witness all signatures collected on their behalf, and therefore it is

not impossible for independent candidates to collect four hundred signatures per district. The Court stated the following in its Memorandum Opinion:

> Woods has misread § 24.2–506—it does not state that *the candidate* must live in the same district or in a district contiguous to those voters signing the petition, but rather only that *the person witnessing the signatures* must live in one of those districts. In other words, § 24.2–506 does not require the independent candidate to witness every signature. It requires only that every signature be witnessed by a qualified voter who resides in that district or in a contiguous district. An independent candidate may therefore meet § 24.2–506 by using several surrogates throughout the state to collect signatures on his behalf. So long as those surrogates are qualified voters and reside in the appropriate districts, the independent candidate is able—in theory—to collect at least 400 signatures from all eleven Congressional districts even though no one district is contiguous to the other ten districts. This may be a heavy burden, but it is not an impossible one.

Mem.Op. § III. This is no Catch–22, as suggested by Wood—the provisions at issue do not rob independent candidates of all means of obtaining the requisite number of voter signatures per district, although they clearly impose a burden more onerous than Wood might prefer.

 This is not the end of the Court's inquiry, because a burden upon ballot access may be sustainable as a practical matter and yet plainly unconstitutional. As Wood has alleged violations of the First and Fourteenth Amendments, it falls to the Court to determine the appropriate level of scrutiny under which to review to the provisions at issue. In *Clements v. Fashing,* the Supreme Court considered two provisions in the Texas State Constitution that limited the ability of a current public official to become a candidate for another public office. *Clements v. Fash-*

*ing,* 457 U.S. 957, 960–61, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). Besides discussing the intricacies of the particular restrictions in dispute, the Supreme Court set forth binding principles that inform and constrain the Court's deliberations in this case. The Supreme Court ruled in *Clements* that under traditional equal protection principles, legislatures are presumed to have acted constitutionally; this presumption (and the deferential, rational basis scrutiny it entails) shall be discarded "only when the challenged statute places burdens upon 'suspect classes' of persons or on a constitutional right that is deemed to be 'fundamental.'" *Clements,* 457 U.S. at 963, 102 S.Ct. 2836 (*citing San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). The right of a candidate to appear on a ballot is not fundamental and thus does not compel strict scrutiny by itself. *Id.; see also Munro v. Socialist Workers Party,* 479 U.S. 189, 193, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986) (while restrictions upon ballot access impinge upon with the freedom to associate for political purposes, this freedom is not absolute and is "necessarily subject to qualification if elections are to be run fairly and effectively."). The Supreme Court acknowledged in *Clements* that strict scrutiny may be appropriate where ballot access measures exclude certain classes of candidates, such as those candidates who may be poor. *Clements,* 457 U.S. at 964–65, 102 S.Ct. 2836. The Supreme Court noted, however, that in its cases upholding ballot measures that required independent candidates to demonstrate a certain level of support among the electorate, it

> has emphasized that the States have important interests in protecting the integrity of their political processes from frivolous or fraudulent candidacies, in ensuring that their election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and burden of run-off elections.

*Id.* at 965, 102 S.Ct. 2836. While states may not make it "virtually impossible" for independent candidates to get on the ballot, it does not follow that any and all burdens placed on those independent candidates trigger strict scrutiny. *Id.* at 965–66, 102 S.Ct. 2836. The Supreme Court concluded by holding that it was necessary to examine the restrictions in that case in terms of the extent of the burdens they place upon the affected candidates. *Id.* at 966, 102 S.Ct. 2836.

█ Upon due consideration, it is clear that rational basis scrutiny is appropriate in this case. Independent candidates such as Wood do not constitute a suspect class, although individual independent candidates may indeed be members of suspect classes on other grounds—for example, an independent candidate who is also a black male. A state would probably not be permitted to impose significant restrictions upon that candidate's access to a ballot on the basis of his race (which is a suspect classification, triggering strict scrutiny), but that state may be permitted to do so on the basis of his independent candidacy. The Supreme Court has recognized also that the right to appear on a ballot is not a fundamental right, thereby closing the only other possible avenue by which this Court might be permitted to apply strict scrutiny to the provisions at issue. Rational basis scrutiny is therefore the appropriate standard of review in this case.

█ As noted in *Clements,* ballot access restrictions may fail even rational basis scrutiny if those restrictions make it "virtually impossible" for an independent candidate to appear on a ballot. *Clements,* 457 U.S. at 965–66, 102 S.Ct. 2836. Such unduly harsh restrictions would bear no rational relationship to the state's legitimate interests in regulating ballot access. However, the Court is satisfied that the provisions at issue here do not make it "virtually impossible" for an independent candidate for the United States Senate to get on the ballot in Virginia. An independent candidate in Virginia need only enlist the assistance of several surrogates in order to collect the required number of signatures in each Congressional district. Wood met the Virginia's 400–signature threshold in nine out of eleven Congressional districts, suggesting that the threshold is not an insurmountable barrier. Wood collected these signatures either with the help of surrogates, who did their job adequately for the most part, or he collected all of the signatures personally, which would undermine his theory that the provisions at issue prevent independent candidates from collecting signatures anywhere other than in their own districts and in contiguous districts. Regardless of the method employed by Wood, it remains possible for independent candidates to collect at least 400 signatures in each Congressional district.

A barrier to ballot access does exist, however, requiring that this Court examine Virginia's interests under rational basis scrutiny to determine whether they justify the imposition of that barrier, no matter how slight it may prove to be in practice. The Supreme Court has held unequivocally that states may require independent or so-called "minor party" candidates to demonstrate a modicum of support among potential voters in order to qualify for a place on the ballot. *See, e.g., Munro,* 479 U.S. at 194–94, 107 S.Ct. 533; *Anderson v. Celebrezze,* 460 U.S. 780, 788–89, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *American Party of Texas v. White,* 415 U.S. 767, 782, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). This line of authority rests upon the state interests recognized in *Clements* —in protecting the integrity of political processes from frivolous or fraudulent candidacies, in ensuring that election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and burden of run-off elections. *See Clements,* 457 U.S. at 965, 102 S.Ct. 2836. *See also Munro,* 479 U.S. at 194–94, 107 S.Ct. 533; *American Party,* 415 U.S. at

782, 94 S.Ct. 1296; *Bullock v. Carter,* 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Jenness,* 403 U.S. at 442, 91 S.Ct. 1970. The Supreme Court stated powerfully in *Lubin v. Panish* that a state's interest "in keeping its ballots within manageable, understandable limits is of the highest order." *Lubin v. Panish,* 415 U.S. 709, 714–715, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). It is therefore beyond question that states have an important interest in regulating ballot access.

Virginia and Wood enter into a duel of sorts as to ballot access systems in other states; without delving into every case cited by the parties, the Court recognizes that a wide range of ballot access measures may bear a rational relation to legitimate state interests in regulating ballot access. In determining whether the provisions at issue satisfy rational basis scrutiny, however, the Court must defer to decisions of the Supreme Court and the Fourth Circuit that have upheld ballot access systems with signature requirements that are more onerous than those faced by Wood. *See, e.g., American Party,* 415 U.S. at 767, 94 S.Ct. 1296; (upheld system that forbid voters from signing more than one petition, and from voting in a party primary after signing an independent candidate's petition); *Jenness,* 403 U.S. at 431, 91 S.Ct. 1970 (upheld system that required independent candidates to obtain the signatures of no less than 5% of eligible voters, in the same amount of time afforded to candidates in party primary); *Socialist Workers Party v. Hechler,* 890 F.2d 1303 (4th Cir.1989) (upheld system that barred voters from both signing an independent candidate's petition and voting in a party primary). These systems do not place a cap upon the number of candidates who may appear on a ballot, but rather limit ballot access to any and all candidates who demonstrate a level of voter support deemed sufficient by the state legislatures. The Fourth Circuit upheld the 10,000–signature requirement specifically in *Libertarian Party of Virginia v. Davis,* ruling that such a requirement—which, in effect,

asks that independent candidates gather the signatures of 0.5% of all eligible Virginia voters in order to get on the ballot—was a "minimal impediment." *Libertarian Party of Virginia v. Davis,* 766 F.2d 865, 868 (4th Cir.1985). Virginia's 10,000–signature threshold for independent candidates therefore passes constitutional muster under the rational basis standard.

The distributional requirement of 400 signatures per Congressional district also bears a rational relationship to Virginia's legitimate interests in regulating ballot access. Wood argues that the geographic distribution of his supporters is irrelevant to his ultimate chances of success; he concedes at oral argument, however, that any candidate for the United States Senate must garner votes from multiple areas within Virginia in order to prevail. This makes sense, for Congressional districts are apportioned on the basis of population. No one district is so overwhelmingly more populous than the other districts as to be able to elect a Senator all by itself. This is by design. For an independent candidate to have any hope of winning a statewide race, he or she must draw support from across the state. If an independent candidate cannot do so, he or she cannot prevail on Election Day. The imposition of a distributional signature requirement in addition to the 10,000 signature threshold is therefore rationally related to Virginia's legitimate interest in restricting ballot access to those candidates with a chance of winning the election. Such a requirement weeds out those individuals who, for whatever reason, are unable or unwilling to mount a campaign sufficient to capture the imaginations of voters across Virginia. No doubt many potential candidates would come forward if Virginia asked only that an individual demonstrate the support of his or her home region, but many of these candidates would enjoy little or no chance of ultimate success. Wood observes at oral argument that he has collected signatures from all eleven Congressional districts within Virginia, and that his efforts

have proven deficient in only two of those districts. This Court cannot say, however, that the 400–per–district requirement is so grossly excessive as to violate rational basis review. This level of scrutiny is the most deferential standard a court may employ, and it does not demand perfection. As the Supreme Court stated in *Kimel v. Florida Board of Regents,* federal courts employing rational basis review will not overturn state actions "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." *Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, 646, 145 L.Ed.2d 522 (2000) (alteration original). Virginia's actions were rational in light of its legitimate interest in restricting ballot access, and that is all the law requires.

Wood offers several cases for the Court's consideration, but only one is apposite to the instant dispute: in *U.S. Term Limits v. Thornton,* the Supreme Court struck down an amendment to the Arkansas State Constitution which forbade candidates for Congress from appearing on the ballot if they had served three terms in the House of Representatives or two terms in the Senate. *U.S. Term Limits v. Thornton,* 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). Wood suggests that the holding in *U.S. Term Limits* prohibits Virginia from "denying ballot access to any class or category of candidates by any means or methods." (Pl.'s Summ J.Mem. at 13.). Wood's reliance on *U.S. Term Limits* is misplaced, however, for the Supreme Court differentiated in that case between state efforts to require additional qualifications of candidates for Congress (which it found unconstitutional) and state efforts to regulate ballot access (which may be constitutional); the Supreme Court found that the amendment in dispute in that case was an effort to impose additional qualifications, and rejected the amendment primarily on this basis. *U.S. Term Limits,* 514 U.S. at 835, 115 S.Ct.

1842. While the Supreme Court barred states from denying ballot access to entire classes of candidates, the case does not say that states cannot impose any ballot access restrictions on independent candidates. *See generally Id.*

The Court is not without sympathy for Wood's position. Perhaps other measures could be imposed in place of the provisions at issue that might serve Virginia's interests equally well. Whether to explore such alternatives is a decision for the Virginia General Assembly, however; the Court cannot overturn portions of Virginia's ballot access system that satisfy rational basis scrutiny simply because independent candidates prefer a lesser burden. Quinn is clearly entitled to judgment as a matter of law, and there are no genuine issues of material fact. For these reasons, Quinn's Motion for Summary Judgment is GRANTED, and Wood's cross-Motion for Summary Judgment is DENIED.

### B. Motion to Expedite Motion for Summary Judgment

As this motion is uncontested and the instant Memorandum Opinion resolves this matter, Wood's Motion to Expedite Motion for Summary Judgment is GRANTED.

## IV. Conclusion

For the reasons discussed above, the motions are resolved as follows:

1. Quinn's Motion for Summary Judgment is GRANTED.

2. Wood's Motion for Summary Judgment is DENIED.

3. Wood's Motion to Expedite Motion for Summary Judgment is GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

And it is SO ORDERED.