**Disamodha C. AMARASINGHE, M.D., Plaintiff,**

v.

**Cameron QUINN, Secretary, Virginia State Board of Elections, and Virginia State Board of Elections, Defendant.**

No. CIV A 2:01CV421.

United States District Court, E.D. Virginia, Norfolk Division.

June 14, 2001.

---

Disamodha C. Amarasinghe, M.D., pro se.

Banci E. Tewolde, Assistant Attorney General, Office of the Attorney General, Richmond, VA, for Defendant.

## ORDER AND OPINION

FRIEDMAN, District Judge.

This matter is before the Court on the plaintiff's motion for preliminary injunction. The plaintiff, Disamodha C. Armarasinghe, M.D., filed a complaint and motion for preliminary injunction, including exhibits, on June 11, 2001. The plaintiff seeks inclusion on the upcoming ballot for the election of a representative for the United States Fourth Congressional District for Virginia. The election is scheduled to occur on June 19, 2001. The plaintiff submitted a petition to the Virginia State Board of Elections to be included on the ballot as a candidate for the Green Party, and his petition was denied. On June 13, the Court conducted a hearing in this matter. Having considered the relevant law and the argument of the parties, for the reasons set forth on the record at the hearing on the motion and herein, the plaintiff's motion for a preliminary injunction is DENIED.

## BACKGROUND

As set forth above, the plaintiff seeks to run for election to the United States House of Representatives for the Fourth Congressional District for Virginia. Based on his desire for election, on or around May 21, 2001, the plaintiff submitted his petition to the Virginia State Board of Elections. The plaintiff's petition included 1663 signatures of persons who allegedly supported the plaintiff's candidacy or at least his inclusion on the ballot. On May 29, 2001, the plaintiff was notified by the defendant, Cameron Quinn, the Secretary for the Virginia State Board of Elections, that he did not qualify for inclusion on the ballot. The basis for the Secretary's decision was that only 813 of the persons who signed the plaintiff's petitions were registered to vote in the Fourth Congressional District. Pursuant to Virginia law, to run for position in the United States House of Representative, the petitioner must have 1000 signatures of qualified voters. *See* Va.Code § 24.2–506.

On June 1, 2001, the plaintiff appealed the decision of the State Board of Elections. However, his appeal was denied. *See* Pl's Ex. 1. On June 8, 2001, the plaintiff was notified that he had exhausted his administrative remedies. *See* Pl's Ex. As a result, on June 11, 2001, the plaintiff filed the instant case seeking emergency injunctive relief. In his complaint and motion for preliminary relief, the plaintiff argues that his First and Fourteenth Amendment rights have been violated and that he will suffer irreparable injury absent an immediate injunction in this case.

## ANALYSIS

I. *Standard of Review—Preliminary Injunction*

▮ Fed.R.Civ.P. 65 provides the standard by which the Court must review

a party's motion for a preliminary injunction. Generally, preliminary injunctive relief is disfavored, and warranted only in "extraordinary circumstances." *Taylor v. Freeman,* 34 F.3d 266, 270, n. 2 (4th Cir. 1994) (citations omitted). For this reason, the movant bears the burden of proof on four independent factors:

(1) the likelihood of irreparable harm to movant if the opposing party is not enjoined;

(2) compared to the likelihood of irreparable harm to the opposing party if enjoined;

(3) the likelihood of movant's success on the merits of the claims; and

(4) whether the public interest favors the plaintiff or the defendant.

*See Manning v. Hunt,* 119 F.3d 254 (4th Cir.1997) (quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812 (4th Cir.1991), and *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189, 193 (4th Cir. 1977)). The court in *Manning* stated that the district court must consider all of the factors in reaching its decision on a preliminary injunction. *Manning,* 119 F.3d at 263. Additionally, the court made clear that in all cases the district court should first consider the balancing of the harms. *Id.* The court stated that "until the balance of the harms has been made, the district judge cannot know how strong and substantial must be the [movant's] showing of 'likelihood of success.'" *Manning,* 119 F.3d at 264.

 If the hardship balance favors the movant, then the likelihood of success factor is displaced and the movant must only show that the questions presented are serious, substantial and difficult enough to make them fair ground for the upcoming litigation. *See Direx,* 952 F.2d at 812–13. However, the converse is also true, and if the hardship balance weighs in favor of the respondent, then the movant has a stricter burden to show likelihood of success. *Manning,* 119 F.3d at 264. Finally, after balancing the harms and determining the degree of substantial likelihood of success which is required and whether the movant has satisfied that burden, then, the court must consider whether a preliminary injunction is in the public's interest. *Manning,* 119 F.3d at 264.

## II. Virginia's Requirement of a Petition of Qualified Voters—Va. Code § 24.2–506

The basis of the plaintiff's case is a constitutional challenge to the validity of the voting statute in Virginia which requires a certain number of signatures of qualified voters for a candidate to be included on the ballot. The statute is simple and provides as follows:

The name of any candidate for any office, other than a party nominee, shall not be printed upon any official ballots provided for the election unless he shall file along with his declaration of candidacy a petition therefor, on a form prescribed by the State Board, *signed by the number of qualified voters specified below* after January 1 of the year in which the election is held and listing the residence address of each such voter. Each signature on the petition shall have been witnessed by a person who is himself a qualified voter, or qualified to register to vote, for the office for which he is circulating the petition and, in the case of a statewide office, . . .

Each voter signing the petition shall provide on the petition his social security number, if any; however, noncompliance with this requirement shall not be cause to invalidate the voter's signature on the petition.

The minimum number of signatures of qualified voters required for candidate petitions shall be as follows:

 1. For a candidate for the United States Senate, Governor, Lieutenant Governor, or Attorney General, 10,000 signatures, including the signatures of at least 400 qualified voters from each congressional district in the Commonwealth;

 *2. For a candidate for the United States House of Representatives, 1,000 signatures;*

 3. For a candidate for the Senate of Virginia, 250 signatures;

 4. For a candidate for the House of Delegates or for a constitutional office, 125 signatures; ...

Va.Code Ann. § 24.2–506 (emphasis added). The plaintiff challenges the statute under both the First and Fourteenth Amendments.

### A. *Irreparable Injury to Plaintiff Absent An Injunction*

■ As set forth above, the plaintiff has been denied access to the ballot by the Virginia Board of Election's rejection of his petition to be included on the upcoming June 19, 2001, ballot for House of Representatives. It is clear that the plaintiff in this case meets the burden of showing irreparable injury. Without an injunction, the June 19 election will take place, notwithstanding write-in votes, the plaintiff will not be considered on the ballot by the voters for a seat in the House of Representatives. Monetary damages are not sought, and indeed would not compensate the plaintiff. Based on the facts of this case, there cannot be serious dispute that the plaintiff will be irreparably injured absent an injunction. *See Edmonds v. Gilmore*, 988 F.Supp. 948, 956 (E.D.Va.1997) (Morgan, J.) (noting an obvious "irreparable injury" to the plaintiff); *Simpson v.*

*City of Hampton, Virginia*, 919 F.Supp. 212 (E.D.Va.1996) (Morgan, J.) (finding irreparable injury to plaintiff seeking to modify at-large system of election, but denying injunction). However, as set forth above, the Court's analysis does not end here. Rather, the Court must balance that harm to the plaintiff against a potential harm to the defendant.

### B. *Irreparable Injury to the Defendant If An Injunction Issued*

■ As set forth above, a mandatory preliminary injunction constitutes extraordinary relief. In a case such as this, an injunction either altering the electoral ballot for the United States House of Representatives one week prior to the scheduled election, or postponing of the election would constitute an irreparable injury to both the candidates properly included on the ballot, and to the electoral system, generally. The Supreme Court has recognized that "states have important interests in protecting the integrity of their political processes ... [and] in ensuring that their election processes are efficient." *Clements v. Fashing*, 457 U.S. 957, 965, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982); *Libertarian Party of Virginia v. Davis*, 766 F.2d 865, 868 (4th Cir.1985); *Edmonds*, 988 F.Supp. at 956. Based on the Court's finding that the harm an injunction would cause to the defendant is at least equal to that of the plaintiff if the injunction is denied, the plaintiff has a considerable burden to obtain a preliminary injunction in this case. *Manning*, 119 F.3d at 264; *Simpson*, 919 F.Supp. at 215.

### C. *Likelihood of Success on the Merits*

As set forth in the Factual Background section above, the plaintiff collected well over 1000 signatures on his petition for ballot inclusion. However, when the petition was reviewed by the Virginia State

Board of Elections, it determined that many of the signatures were not of "qualified" or registered voters, as is required by the Virginia Code. *See* Va.Code Ann. § 24.2–506. Unfortunately for the plaintiff, he did not collect 1000 or more signatures of qualified voters, as required by the Code, and therefore, the plaintiff's petition was denied. The plaintiff does not contend that the Virginia State Board of Elections improperly counted the qualified voter signatures on his petition; nor does he contend that the statute was misinterpreted by the State Board of Elections. Rather, the plaintiff contends that the statute requiring a certain number of "qualified" voters' signatures is unconstitutional and that his First and Fourteenth Amendment rights are violated by the signature requirement.

■ Because the plaintiff alleges violations of both his First and Fourteenth Amendment rights, the Court must determine under what level of scrutiny it should review the plaintiff's claims. Under traditional equal protection principles, legislatures are presumed to have acted constitutionally, and this presumption is overcome "only when the challenged statute places burdens upon 'suspect classes' of persons or on a constitutional right that is deemed to be 'fundamental.'" *Clements v. Fashing*, 457 U.S. 957, 960–61, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (considering two provisions in the Texas State Constitution that limited the ability of a current public official to become a candidate for public office) (citations omitted). In *Clements*, the Supreme Court held that a right to appear on a ballot is not a "fundamental right" and therefore, does not compel strict scrutiny. *Id.; Wood v. Quinn*, 104 F.Supp.2d 611, 614 (E.D.Va.2000) (Spencer, J.), *aff'd*, 230 F.3d 1356 (4th Cir.2000) (unpublished), *cert. denied*, ── U.S. ──, 121 S.Ct. 1962, 149 L.Ed.2d 757 (2001).

Therefore, "rational basis" scrutiny is appropriate in a case such as this. *Wood*, 104 F.Supp.2d at 615. That is the challenged statute must have a rational relationship to the state's legitimate interests in regulating ballot access. *Wood v. Quinn*, 104 F.Supp.2d at 615.

■ In *Clements*, the Court noted that ballot access restrictions may fail even a rational basis analysis if the restrictions make it "virtually impossible" for an independent candidate to appear on the ballot. *Clements*, 457 U.S. at 965–66, 102 S.Ct. 2836. In a recent and remarkably similar case, the court in *Wood* denied a potential candidate's motion for preliminary relief and motion for summary judgment challenging the same Virginia Code section at issue in this case—Va. Code 24.2–506. In *Wood*, the plaintiff challenged two aspects of the statute, the signature requirement, and the witness requirement. Wood desired to run for the United States Senate but failed to collect at least 400 signatures in two of the eleven required districts. *Wood*, 104 F.Supp.2d at 612. The court reviewed Wood's challenge to the signature requirement and found that the Virginia Code section requiring the collection of 400 signatures from each of the applicable congressional districts (eleven) in order to appear on the ballot for the United States Senate was not insurmountable. *Id.*

■ Similarly in this case, the plaintiff collected over 800 qualified voter signatures and was less than 200 qualified voter signatures from achieving his goal of ballot access. Based on the facts before the Court and the relevant case law on this subject, this Court cannot find that the Virginia statute requiring 1000 qualified voter signatures imposes a severe burden or makes it "virtually impossible" for a potential candidate, such as the plaintiff, to

run for office.[1] *See Wood v. Meadows*, 207 F.3d 708, 710–12 (4th Cir.2000) (citing and relying on *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)).

The Supreme Court has consistently held that a state may require a candidate for public office to demonstrate their support among potential voters in order to qualify for a place on the ballot. *Wood*, 104 F.Supp.2d at 615 (citations omitted). While the plaintiff cites Supreme Court cases which he contends support his constitutional claims under the First and Fourteenth Amendment, the cases the *pro se* plaintiff cites are not on-point with the facts before the Court. Instead, the most relevant cases are those set forth herein and in the district court's recent decision in *Wood*. Both the Fourth Circuit and the Supreme Court have upheld statutes containing considerably more onerous requirements than the statute challenged in this case. *Wood*, 104 F.Supp.2d at 616 (citing numerous Fourth Circuit and Supreme Court cases upholding signature requirements). The signature requirement of collecting 1000 qualified voter signatures in order to appear on the ballot for House of Representatives bears a rational relationship to Virginia's legitimate interests in regulating ballot access.

▮ The plaintiff argues that the signatures should not be limited to "qualified voters" and that the distinction between qualified and unqualified voters constitutes discrimination against unqualified (or unregistered) voters. However, Virginians who elect not to register or who are unqualified to register to vote do not constitute a "suspect" class or group subject to special protection under the Constitution. The plaintiff does not dispute that he might have been aware of the signature requirement of "qualified" voters when he collected the signatures for his petition, and that at least in some instances, he inquired as to whether the person signing the petition was indeed qualified to vote in the District.

The signature requirement is designed to predict whether the potential candidate can garner sufficient support to sustain his or her access to the ballot. *Wood*, 104 F.Supp.2d at 616. As the court held in *Wood*, such a requirement "weeds out those individuals who, for whatever reason, are unable or unwilling to mount a campaign sufficient to capture the imaginations of voters across Virginia." *Id.; see also Wood v. Meadows*, 207 F.3d at 714 (addressing filing deadlines). "In view of the indulgent nature of Virginia's ballot access scheme, the [challenged] is both reasonable and nondiscriminatory and is justified by the recognized state interest in protecting the electoral process from undue burden posed by frivolous candidates and insincere ballot cluttering." *Libertarian Party*, 766 F.2d at 869 (finding with regard to other candidate requirements imposed by the Virginia Code). With regard to the Code section challenged in this case, the Court cannot say that the 1000 qualified voter signature requirement is so excessive as to violate any of the plaintiff's constitutional rights. For these reasons, and based on the case law, the plaintiff has little likelihood of success on the merits of

---

1. Notably, according to the state's memorandum and its argument at the hearing, as of June 1, 2001, there were 350,570 registered voters residing in the Fourth Congressional District of Virginia. As a result, the 1000 qualified voter requirement imposes a burden of collecting signatures from less than 0.25% of the registered voters. Additionally, under the Virginia law, a voter can sign as many petitions as he or she desires. *Wood*, 207 F.3d at 713.

his claims in this case.[2]

D. *Public Interest*

Based on all of the above, the Court cannot find that the public interest will be served by the alteration or postponement of the scheduled June 19, 2001, election for House of Representatives. "Such action would be intrusive, and the evidence before the Court does not justify such an intrusion." *Simpson,* 919 F.Supp. at 215.

### CONCLUSION

For the reasons set forth above, the plaintiff's motion for preliminary injunction is DENIED. The defendant's motion to dismiss (filed June 13, 2001) remains pending. Following the plaintiff's responsive memorandum, the Court will take the motion under advisement. At this time, it does not appear that additional oral argument will be necessary.

It is so ORDERED.

As the Court indicated on the record at the hearing, this Order and Opinion will be faxed to the *pro se* plaintiff and to the counsel for the defendant. Additionally, the Clerk is DIRECTED to send a copy of this Order to the *pro se* plaintiff and to the defendant's counsel.

2. As the Court explained at the hearing on the preliminary injunction, the Court additionally has concerns with the residency of the plaintiff and his eligibility to run for the Fourth District seat. Based on his complaint and the information before the Court, the plaintiff is a resident of the City of Norfolk. The Fourth Congressional District for the House of Representatives, for which the plaintiff seeks election, does not encompass Norfolk. However, because the defendants did not pursue this argument, and it was not a basis for the Board's decision, it is not the basis of this Court's opinion.